UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

UNITED STATES OF AMERICA,

Plaintiff,

V.

BRIANNA SHARDAI MARY HANSPARD,

Defendant.

Criminal Action No. 5: 23-125-DCR

**MEMORANDUM OPININON AND ORDER**

*** *** *** ***

Defendant Brianna Shardai Mary Hanspard appeared before United States Magistrate Judge Matthew Stinnett on October 19, 2023, based on a Complaint alleging violations of 21 U.S.C. §§ 841(a) and 846. The Magistrate Judge subsequently denied the United States' oral motion for detention following an evidentiary hearing. The government now seeks revocation of the release order pursuant to 18 U.S.C. § 3145(a).

Having considered record, the Court will revoke the defendant's previously imposed conditions of release and require that she be detained pending trial.

**I.**

The United States filed a criminal Complaint on September 1, 2023, alleging that Defendant Hanspard committed the following offenses: (1) possession with intent to distribute 500 grams or more of a mixture of methamphetamine and a detectable amount of fentanyl and (2) conspiring to possess with the intent to distribute 500 grams or more of a mixture of methamphetamine and a detectable amount of fentanyl. The Complaint is based on the

affidavit of Christine McHugh, Special Agent ("SA") with the Drug Enforcement Administration ("DEA.")

McHugh reported that members of the Kentucky State Police ("KSP") East Interdiction Team were investigating suspected drug trafficking activities on the evening of July 10, 2023. At approximately 7:15 p.m., officers observed a 2021 Jeep Compass with an Illinois vehicle plate exit Interstate 75 in Scott County, Kentucky. KSP Troopers observed that the Compass failed to come to a stop at the stop sign at the juncture of the interstate exit ramp and Porter Road. Marked KSP units activated their emergency lights and conducted a traffic stop of the vehicle in the parking lot of Love's Travel Stop.[1]

Defendant Hanspard was identified as the driver and sole occupant of the Compass. A check of a reliable law enforcement database revealed the vehicle to be registered to PV Holdings, which is the parent corporation for numerous rental car agencies. KSP Troopers had Hanspard exit the vehicle, at which time she provided verbal consent to search the Compass. Hanspard, however, withdrew consent shortly after the search began. As one trooper completed a "courtesy citation" for Hanspard, another trooper deployed his trained drug odor detection dog to conduct an open-air sniff of the perimeter of the vehicle. The dog gave a positive alert at the rear of the Compass.

KSP Troopers subsequently conducted a search of the vehicle. During the search, they located and seized a blue duffle bag in the rear cargo area. The duffle bag contained quantities of suspected methamphetamine and suspected fentanyl. The suspected methamphetamine

---

[1] Other members of the Interdiction Team contemporaneously topped another vehicle occupied by Khmari Smith and Khari Smith, who are defendants in Lexington Criminal Action No. 5: 23-CR-108.

subsequently field tested positive for methamphetamine and had a gross weight of 10.23 kilograms. The suspected fentanyl was not field tested due to safety concerns, but appeared consistent in texture, color, and composition with fentanyl seized in other investigations. The suspected fentanyl weighed 299.4 grams.

Hanspard was transported to the DEA office to be interviewed by investigators. After initially disavowing knowledge of the drugs, she ultimately admitted that she had been driving the substances from Detroit, Michigan to Lexington, Kentucky in exchange for money. She also stated that she had "done a previous trip to this location."[2] She further advised that the Jeep Compass was rented in her name and investigators recovered documentation from the vehicle corroborating this fact. Hanspard gave written consent for officers to examine telephones that were seized in conjunction with the suspected drugs. Hanspard opened an application on one phone and identified an address in Lexington, Kentucky, as the location to which she was directed to deliver the drugs found in her car.

Hanspard was charged in Scott County District Court with two counts of trafficking in a controlled substance (first degree) and remanded to custody. This Court issued a writ of habeas corpus *ad prosequendum* on October 11, 2023, to secure Hanspard's attendance for her initial appearance on October 19, 2023, with respect to the instant Complaint

The United States moved for pretrial detention at Hanspard's initial appearance. The Magistrate Judge scheduled a detention/preliminary hearing on October 27, 2023. During the

---

[2] *See* Record No. 18, pp. 7, 28, and 29. Counsel for the defendant argued during the hearing held this date that testimony was not presented during the October 27, 2023, hearing indicating that the defendant was involved in other drug transports to this district. He further objected to the government offering further testimony on this point. Based on counsel's false assertions, the government was not allowed to present clarifying testimony from Task Force Officer Clements concerning the defendant's admissions of prior trips.

hearing, SA McHugh testified consistent with her affidavit. The Court also received testimony from United States Probation Officer Brian Rains, who recommended that Hanspard be detained based on her risk of non-appearance and danger. The defendant's mother and grandmother also testified.

The Magistrate Judge determined that the United States had established probable cause to believe that the alleged offenses occurred, and that Defendant Hanspard committed them. On the issue of detention, however, the Magistrate Judge ultimately concluded that Hanspard had produced sufficient evidence to rebut the presumption of detention with respect to both nonappearance and danger. He further determined that electronic monitoring and home detention would reasonably protect the community and ordered that the defendant be released.

On November 9, 2023, the day following issuance of the release order, the United States filed a "notice of appeal," pursuant to 18 U.S.C. § 3145(a). The undersigned held a hearing on this date during which the parties presented their respective arguments concerning the government's motion to revoke the release order.

**II.**

A defendant may be detained pending trial only when a judicial officer "finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e). The default position is that defendants should be released pending trial; it is the government's burden to prove that no conditions of release can ensure the safety of the community and the defendant's appearance in court. *United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010). If a defendant is ordered to be released by a magistrate judge, "an attorney for the government

may file, with the court having original jurisdiction over the offense, a motion for revocation of the order or amendment of the conditions of release." 18 U.S.C. § 3145(a)(1).

Despite the default position supporting release, there is a rebuttable presumption in favor of detention when, as here, there is probable cause to believe that the defendant committed "an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act." § 3142(e)(3)(A). The defendant bears the burden of production to overcome the presumption when it applies, but the United States retains the burden of persuasion in proving that the defendant should be detained pending trial. *Id.*; *Stone*, 608 F.3d at 945.

To rebut the presumption, the defendant must come forward with some evidence to indicate that she is not a danger to the community or a flight risk. *Stone*, 608 F.3d at 945. Even when a defendant rebuts the presumption, it does not "disappear entirely, but remains a factor to be considered among those weighed by the district court." *Id.* Title 18 of the United States Code, section 3142(g), sets forth the factors for the Court to consider in deciding whether to set conditions of release. They are:

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person, including—
>
> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>
> (B) whether, at the time of the current offense or arrest, the person was

> on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. In considering the conditions of release described in subsection (c)(1)(B)(xi) or (c)(1)(B)(xii) of this section, the judicial officer may upon his own motion, or shall upon the motion of the Government, conduct an inquiry into the source of the property to be designated for potential forfeiture or offered as collateral to secure a bond, and shall decline to accept the designation, or the use as collateral, of property that, because of its source, will not reasonably assure the appearance of the person as required.

18 U.S.C. § 3142(g). But consideration of these factors does not modify or limit the presumption of the defendant's innocence. *Stone*, 608 F.3d 939 at 946; 18 U.S.C. § 3142(j).

There is a presumption of detention in this case based on the crimes charged—possession with intent to distribute 500 grams or more of a mixture of methamphetamine and a detectable amount of fentanyl and conspiring to possess with the intent to distribute 500 grams or more of a mixture of methamphetamine and a detectable amount of fentanyl. *See* § 3142(e)(3); 21 U.S.C. § 841, 846. Even if the defendant had come forward with sufficient evidence to rebut the presumption (and she has not), the information submitted (testimony and proffer) is not sufficient to outweigh the nature and characteristics of the offenses charged, the weight of the evidence against her, and her history and characteristics, including her criminal history, which includes absconding probation.

The crimes charged are particularly serious based on the large quantities of substances involved and the presence of fentanyl. 21 U.S.C. § 841(b)(1)(A). Based on SA McHugh's testimony, the evidence against the defendant is very strong. Not only were the controlled substances found in her vehicle during a traffic stop, Hanspard admitted that she was transporting controlled substances from Detroit to Lexington in exchange for money and stated that she had done so on a previous occasion.

Defendant Hanspard is 29 years-old and resides with her grandmother in Detroit, Michigan. The pretrial services report prepared by the United States Probation Office indicates that Hanspard first encountered the criminal justice system in 2015, when she was charged on separate occasions with larceny and retail fraud in Michigan. Matters escalated in 2018 when Hanspard was convicted of possession with intent to sell/deliver heroin in West Virginia. On April 16, 2018, Hanspard was sentenced to one year in custody, suspended, followed by two years of supervised probation. A warrant was issued on July 26, 2018, when Hanspard failed to report a change of address, failed to report, and absconded from supervision.

Hanspard was convicted in a separate West Virginia case in 2018 for keeping or maintaining a dwelling for the keeping of a controlled substance. Shortly after beginning her term of parole, she was arrested in Indiana when she was located in the company of a prohibited person, who was in possession of a large number of firearms and currency.

Hanspard has no ties to the Eastern District of Kentucky. However, she maintains that she has strong connections to Detroit, Michigan, and could be supervised in the Eastern District of Michigan. Evidence presented during the detention hearing indicates that Hanspard is a lifelong resident of the Detroit area. Hanspard, who has three children and is currently pregnant, has resided with her grandmother, Mary Barnes, since she was 18. Barnes testified that she sees Hanspard "when she's not working," but was unaware that Hanspard has been unemployed since April of 2023. Barnes elaborated that, when Hanspard is out of the house, Barnes does not ask any questions, but simply takes care of the defendant's children. Barnes was largely unaware of Hanspard's previous criminal activity but reported that she once cared for Hanspard's children for 259 consecutive days while Hanspard was serving time in jail.

Hanspard's mother, Yolanda Carson, also testified regarding her relationship with the defendant. Although Carson reported that the two are close, she seemed uncertain concerning Hanspard's employment status from April 2023 to the present. Carson also was unaware of much of Hanspard's criminal history, reporting, "we don't talk about that kind of stuff." Carson did not know about Hanspard's previous trips to West Virginia and Indiana—Hanspard simply told Carson that she was "going out of state" and then she would "let [them] know when she's back."

Based on the foregoing testimony, the Magistrate Judge ultimately concluded that Hanspard would be unlikely to flee the Eastern District of Michigan due to her relationships with her mother and grandmother and her alleged involvement in her children's daily lives. The undersigned, however, is not similarly persuaded by the information provided or these relationships. Both Carson's and Barnes' testimony indicates that Hanspard generally comes and goes as she pleases and refrains from disclosing important details about her life. Barnes testified that her primary concern is Hanspard's children, whom she transports to and from school every day. And while Hanspard may have contact with her children on most days, Barnes' testimony indicates that Hanspard could flee with the knowledge that her grandmother will care for her children.

Barnes testified that she would not have a problem reporting any violation of release conditions and later indicated that would call somebody if the defendant did violate her conditions "because of her kids." [Record No. 18, pp. 64, 66] The undersigned, however, questions whether Barnes would take action if it resulted in incarceration for the defendant. Most likely, Barns would follow past behavior and not ask questions. [Record No. 18, p. 66] Regardless, Carson and Barnes could only report violations of which they were aware. Based

on their testimony, the Court is not persuaded that any potential violations would come to their attention and be passed to the United States Probation Office or the undersigned.

The record also indicates that Hanspard has connections in various states including Indiana, West Virginia, and Kentucky, and that she recently traveled to Mexico. Further, she has shown the capacity for fleeing, as she previously absconded from probation while under supervision in a state court matter in West Virginia. The crimes charged invoke a mandatory minimum sentence of 10 years' imprisonment, which provides a significant motive to flee. These facts lead the Court to conclude that Hanspard poses a flight risk and that detention is necessary.

The Court also considers "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g)(4). A review of the release order and transcript of the October 27, 2023, hearing leads the undersigned to conclude that the Magistrate Judge placed undue significance on the fact that Hanspard was not a target of law enforcement's investigation at the time of her arrest. Simply because Hanspard was not on law enforcement's radar does not minimize the seriousness of the alleged crimes. Drug trafficking organizations cannot operate without couriers and transporting controlled substances—particularly the type alleged to have been involved in the instant offenses—pose a serious risk of harm to the community. Additionally, the defendant has prior convictions for controlled substances offenses and has a history of non-compliance with supervision. Thus, the Court finds by clear and convincing evidence that the danger posed to the community weighs in favor of detention. *See* 18 U.S.C. § 3142(g)(4).

## III.

In summary, the factors outlined in 18 U.S.C. § 3142(g) support pretrial detention. The undersigned concludes, based on clear and convincing evidence, that there are no conditions of release that will reasonably assure the appearance of the defendant at trial and the safety of the community. Therefore, being sufficiently advised, it is hereby

**ORDERED** as follows:

1. The Release Order dated November 8, 2023 [Record No. 12] is **VACATED**.

2. The United States' oral motion for detention is **GRANTED**.

3. Subject to intervening orders, Defendant Brianna Shardai Mary Hanspard will **REMAIN** in custody pending trial.

4. The Court commits the defendant to the custody of the Attorney General or a designated representative for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or held in custody for purposes of appeal. The defendant must be afforded a reasonable opportunity to consult privately with defense counsel. On order of the Court or on request of an attorney for the government, the person in charge of the corrections facility must deliver the defendant to the United States Marshal for court appearances.

Dated: November 15, 2023.

UNITED STATES DISTRICT COURT EASTERN DISTRICT OF KENTUCKY

Danny C. Reeves, Chief Judge
United States District Court
Eastern District of Kentucky